IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

Columbia Gas of Ohio, Inc.,             Case No. 3:07 CV 2732

            Plaintiff,             MEMORANDUM OPINION
                                     AND ORDER

    -vs-
                                        JUDGE JACK ZOUHARY

Local No. 349, Utility Workers Union
   of America,

            Defendant.

## INTRODUCTION

This matter is before the Court on Cross Motions for Summary Judgment (Doc. Nos. 17 & 19; 30 & 31). Plaintiff Columbia Gas of Ohio, Inc. (Columbia Gas) seeks summary judgment on its claim to vacate an arbitration award; Defendant Utility Workers Union of America, Local No. 349 (UWUA) seeks summary judgment on its claim to enforce the award.

The Court has jurisdiction over this action pursuant to 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.")

**BACKGROUND**

This case arises following an arbitration proceeding between Columbia Gas and William Rose, a former Service Technician employed by Columbia Gas. Columbia Gas, a public utility that provides natural gas service to customers in Toledo and surrounding communities, and UWUA, a union representing some of Columbia Gas' employees, are parties to a collective bargaining agreement that provides for grievance and arbitration proceedings.

Under Columbia Gas policy, Service Technicians make service calls to residences to investigate potential leaks in piping and, if a leak is discovered, are required to advise the customer to have the leak fixed but cannot recommend a particular plumber. After the repairs are completed, a different Technician returns to the site to inspect the work and, once approved, the trench containing the piping is filled in. Rose, who was properly qualified to perform these tasks, undertook "side jobs" while off-duty to make such repairs over the course of twenty years. Such moonlighting is prohibited by written company policy. Technicians cannot solicit such jobs for themselves or others, and cannot inspect or backfill repairs they personally performed.

In June 2006, Columbia Gas determined that Rose, along with three other Technicians, violated these policies as well as federal Department of Transportation (DOT) regulations by performing the inspection and backfilling of side jobs they had personally completed. Columbia Gas terminated Rose after he rejected an offer of retirement and also terminated three other Technicians for the same misconduct. Seven other Technicians, who filed false work logs to help Rose and the three other employees cover up their moonlighting, were reinstated after signing "last chance" agreements that allowed them to keep their positions.

The UWUA filed a grievance on behalf of Rose, and the matter eventually was referred to binding arbitration under the collective bargaining agreement. The arbitrator held hearings in February, March and May 2007 and issued a written opinion and award in August 2007. The award found (1) Rose did not violate Columbia Gas' anti-solicitation policies; (2) Rose violated Columbia Gas' conflict-of-interest and business ethics rules in performing side repair jobs on residences he had personally inspected; and (3) Rose violated DOT regulations and company policies by backfilling trenches after he had personally performed the repair work. Despite these violations, the arbitrator reinstated Rose to his previous position with no loss in seniority, but without back pay. The reinstatement award effectively reduced his discipline to a fourteen-month suspension without pay.

## DISCUSSION

### Summary Judgment Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Federal Civil Rule 56(c). The moving party bears the initial responsibility of "informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may meet this burden by demonstrating the absence of evidence supporting one or more essential elements of the non-movant's claim. *Id.* at 323-25. Once the movant meets this burden, the opposing party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Federal Civil Rule 56(e)).

3

This case is particularly appropriate for summary judgment because the parties do not dispute the material facts found by the arbitrator. The only issue for the Court's determination is a legal one: whether to overturn the arbitrator's conclusion to reinstate Rose as a violation of public policy.

**Enforcement of Arbitration Award**

The fundamental inquiry for the Court is whether there is any reason to diverge from the general rule that courts should enforce arbitration awards. The Sixth Circuit recently set forth the framework for a federal court's review of a labor arbitration award:

> Did the arbitrator act "outside his authority" by resolving a dispute not committed to arbitration? Did the arbitrator commit fraud, have a conflict of interest or otherwise act dishonestly in issuing the award? And in resolving any legal or factual disputes in the case, was the arbitrator "arguably construing or applying the contract"? So long as the arbitrator does not offend any of these requirements, the request for judicial intervention should be resisted even though the arbitrator made "serious," "improvident" or "silly" errors in resolving the merits of the dispute.

*Michigan Family Resources, Inc. v. Serv. Employees Int'l Union Local 517M*, 475 F.3d 746, 753 (6th Cir. 2007). However, in the instant case, Columbia Gas does not argue any of the grounds described in *Michigan Family* but instead argues the award violates public policy.

*Michigan Family* did not abrogate the public policy exception to enforcement of arbitration. This exception to the general rule requiring enforcement of arbitration awards arises from the common law of contracts and survives the holding in *Michigan Family*. *See United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 42 (1987) ("A court's refusal to enforce an arbitrator's award under a collective-bargaining agreement because it is contrary to public policy is a specific application of the more general doctrine, rooted in the common law, that a court may refuse to enforce contracts that violate law or public policy.") (quoting *W.R. Grace & Co. v. Rubber Workers*, 461 U.S. 757, 766

(1983)). However, this exception is limited, and must arise from an explicit, dominant and well-defined policy:

> [T]he public policy exception to the general deference afforded arbitration awards is very limited, and may be exercised only where several strict standards are met. First, the decision must violate some explicit public policy that is well defined and dominant. *Id.* at 43, 108 S.Ct. at 367. This dominant public policy is to be ascertained by reference to laws and legal precedents and not from general considerations of supposed public interests. *Id.*, quoting *W.R. Grace*, 461 U.S. at 766, 103 S.Ct. at 2183; *Muschany v. United States*, 324 U.S. 49, 66, 65 S.Ct. 442, 451, 89 L.Ed. 744 (1945). Second, the conflict between the public policy and the arbitration award must be explicit and clearly shown. *Misco*, 484 U.S. at 43, 108 S.Ct. at 367. Further, it is not sufficient that the "grievant's conduct for which he was disciplined violated some public policy or law," rather, the relevant issue is whether the arbitrator's award "requiring the reinstatement of the grievance . . . violated some explicit public policy." *Interstate Brands*, 909 F.2d at 893. The courts have emphasized that this exception is limited and "does not otherwise sanction a broad judicial power to set aside arbitration awards as against public policy." *Misco*, 484 U.S. at 43, 108 S.Ct. at 367.

*Shelby County Health Care Corp. v. Am. Fed'n of State, County & Mun. Employees*, *Local 1733*, 967 F.2d 1091, 1095 (6th Cir. 1992). The Court therefore focuses its inquiry on two issues: (1) is there an "explicit" and "dominant" public policy and (2) does the reinstatement of Rose violate that policy.

### Public Policy Relating to Natural Gas

The delivery of natural gas is regulated by the Ohio and federal governments. Congress has enacted the Pipeline Safety Act and empowered the DOT to govern safety in pipeline transportation and facilities. 49 U.S.C. §§ 60101-60137. The purpose of the law is to "provide adequate protection against risks to life and property posed by pipeline transportation and pipeline facilities by improving the regulatory and enforcement authority of the Secretary of Transportation." 49 U.S.C. § 60102(a)(1). The statute further requires pipeline operators to assure its employees are properly qualified: "The operator of a pipeline facility shall ensure that employees who operate and maintain the facility are qualified to operate and maintain the pipeline facilities." *Id.* § 60102(a)(3). Operators

are also subject to verification of their qualifications program: "[T]he Secretary of Transportation shall require the operator of a pipeline facility to develop and adopt a qualification program to ensure that the individuals who perform covered tasks are qualified to conduct such tasks." *Id.* § 60131(a).

Columbia Gas also points to several federal regulations that govern the industry: 49 C.F.R. § 192.273 (providing that pipeline joints must be capable of resisting expansion and contraction); 49 C.F.R. § 192.511 (providing testing requirements for service lines); and 49 C.F.R. § 192.513 (providing testing requirements for plastic pipelines). These laws demonstrate a policy of promoting safe operation and requiring pipeline operators to provide adequate training for employees. Although they set a framework and specify safety requirements, the federal laws do not directly address employee negligence or misconduct and employer responsibility.

The corresponding Ohio laws, however, provide more specific prohibitions and fines for safety lapses and violations. The Ohio Public Utilities Commission (PUCO) specifically adopted the federal regulations. Ohio Admin. Code § 4901:1-16-03 ("The commission hereby adopts the GPS [Gas Pipeline Safety] regulations of the U.S. department of transportation contained in 49 C.F.R. 40, 191, 192 and 199 effective as of March 5, 2007."). In addition, Ohio statutory law imposes liability on natural gas pipeline operators for employee misconduct. *See* Ohio Revised Code § 4905.93 ("[T]he act or omission of any officer, employee, or agent of an operator, while acting within the scope of his duties or employment, is deemed the act or omission of the operator."). PUCO has specific enforcement powers including civil penalties and remedial actions. Ohio Revised Code § 4905.95(B)(1)(b) (PUCO "[m]ay assess upon the operator forfeitures of not more than one hundred thousand dollars for each day of each violation or noncompliance, except that the aggregate of such forfeitures shall not exceed five hundred thousand dollars for any related series of violations or

6

noncompliances"). The Ohio Attorney General also has enforcement powers under Ohio Revised Code § 4905.96 ("Upon the written request of or order by the public utilities commission, the attorney general shall bring a civil action against an operator in the name of the state to enforce orders of the Commission. . . .").[1]  Together, these state and federal regulations serve the following purposes: (1) to ensure the safe operation of natural gas pipelines; (2) to ensure employees are qualified and trained; and (3) to hold pipeline operators liable for the errors or misconduct of their employees in the scope of their employment.

### The Arbitration Award

Having determined the public policy at issue in the case, the Court now turns to the arbitration award. The arbitrator's decision reinstated Rose despite his violation of federal and state law when he "moonlighted" from his authorized employment as a Technician. Most significantly, Rose violated DOT regulations by "filling-in gas line trenches, turning gas on, and re-lighting appliances before a Company Service Technician had visually inspected and tested his work product" (Tr. 53). The arbitrator concluded "[w]ithout question, such premature action violated both Federal law and Company Policy No. 725-4" (Tr. 53). Policy requires someone performing this work to have another Technician inspect the work to "confirm[] the integrity of the system" (Tr. 41).

---

[1] In its Motion for Summary Judgment, Columbia Gas also states that "under O.R.C. § 4905.99, a violation of O.R.C. § 4905.96 is a fifth degree felony" (Brief p. 15). However, § 4905.99(B) provides: "Whoever violates section 4905.56 of the Revised Code is guilty of a felony of the fifth degree." Sections 4905.56 and 4905.96 are distinct from each other. And Section 4905.96 is **not** mentioned in Section 4905.99. Therefore, the specter of criminal liability does not shadow this case.

7

The arbitrator further found Rose should have informed Columbia Gas of the need to inspect these installations, as "the Company certainly had an interest in seeing to it that the safety of its customers was not compromised by the failure to complete all required safety inspections" (Tr. 54). Indeed, the arbitrator found one of the sites Rose had worked on was later discovered to be in violation of DOT specifications because a valve had been improperly repaired (Tr. 54-55). Rose's violation was not that he was unqualified -- the arbitrator noted he was qualified under the mandatory training and certification programs (Tr. 41) -- but rather that he did not follow regulations and policy in having the work independently inspected. The arbitrator concluded Rose should be effectively suspended but reinstated as a Technician (Tr. 57).

Columbia Gas argues the ordered reinstatement of Rose is a violation of public policy because the company is forced to employ someone who has shown a willingness to disregard regulations and policy that are designed to ensure public safety and possibly subject Columbia Gas to penalties if it is found liable for similar conduct in the future. As Columbia Gas puts it, the company would be put in a "legal conundrum" (MSJ at p. 16) because it would be responsible for someone who "intentionally violates . . . imperative public safety laws" (MSJ at p. 17). The UWUA counters that the laws and regulations described above do not constitute "an explicit, defined, and dominant public policy" and, alternatively, that Rose's conduct was outside the scope of his employment and therefore not sufficiently related to his job to warrant termination.[2]

In deciding whether the reinstatement should be vacated, the Court looks beyond the broad policies embodied in the laws and regulations and considers specifically whether the award violates

---

[2] This latter argument is meritless. Rose's conduct, though occurring outside normal business hours, was specifically addressed by written company policy and was directly related to Columbia Gas operations.

8

explicit and well-defined policy. *See Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am. (UAW) Local 771 v. Micro Mfg., Inc.*, 895 F. Supp. 170, 175 (E.D. Mich. 1995) ("[A]n employer seeking to vacate an arbitration award on public policy grounds must show that the award itself violates the law."). A review of analogous cases guides the Court's judgment.

### Case Law Applying the Public Policy Exception

In a similar case involving the natural gas industry, a court declined to vacate an arbitration award reinstating an employee who left several million gallons of gas unattended for several hours despite being the sole person charged with safety for that shift. *MidAmerican Energy Co. v. Int'l Bhd. of Elec. Workers Local 499*, 345 F.3d 616 (8th Cir. 2003). The *MidAmerican* court acknowledged that the industry regulations involved "significant safety and security concerns" but found no authority for the proposition that "liquid natural gas is so dangerous that a single violation of safety protocols is sufficient cause to deprive the employee of the opportunity to work for that company." *Id.* at 621. The court contrasted the natural gas regulations with nuclear power regulations, the latter which "contain specific and exacting requirements." *Id.* The court there also pointed to the fact that the award allowed the employer to transfer the employee to another position where he could be more closely supervised or in a less "sensitive" position. *Id.* at 622. *MidAmerican* concluded the reinstatement of the employee did not violate public policy.

Likewise, in *Shelby*, *supra*, which Columbia Gas cites for an example of an explicit and well-defined public policy, the court determined the grievant employee violated a clear and well-defined public policy when she participated in an illegal strike in violation of the National Labor Relations Act (NLRA). The NLRA provides that an employee who participates in an illegal strike must lose his or her protected status as an employee under the NLRA. However, the statute contains no

9

requirement to permanently terminate the employee but instead grants the employer discretion to discharge or retain the employee. The court held the arbitrator's reinstatement of the employee did not violate the public policy embodied in the NLRA because the statute did not require the employer to terminate the employee. 967 F.2d at 1096-97.

The court also observed the reinstatement did not deprive the employer of its statutory discretion to terminate the employee because the employer freely entered into an agreement that provided for arbitration, thereby exercising its discretion to be bound by the arbitration award. *Id.* at 1097. See also *Mid Michigan Reg'l Med. Ctr.-Clare v. Prof'l Employees Div. of Local 79, SEIU, AFL-CIO*, 183 F. 3d 497, 505-06 (6th Cir. 1999) (possibility of vicarious liability is unpersuasive as public policy basis for vacating arbitration award because employer freely bargained to allow arbitrator to review its decision to discharge employee who negligently administered care to patient). In other words, the employee's conduct violated an explicit and well-defined public policy, but the reinstatement did not. The scenario in *Shelby* is not unlike the instant case, where Rose's conduct violated both the law and company policy, but his reinstatement did not. The instant case is also analogous to *Mid Michigan*, where the speculative possibility of vicarious employer liability did not amount to a violation of public policy.

Another court dealing with a similar situation declined to vacate an arbitration award that reinstated a gas company employee who improperly turned off a valve and caused danger to area residents. *Kane Gas Light & Heating Co. v. Int'l Bhd. of Firemen & Oilers, Local 112*, 687 F.2d 673 (3d Cir. 1982). In that case, a gas company employee, through "reckless inadvertence," shut off the main valve supplying natural gas to an entire borough when the outside temperature was ten degrees below zero. This error "could easily have resulted in danger to life as well as substantial property

damage." *Id.* at 676. Indeed, "[t]here was potential for explosion and real disaster." *Id.* Nonetheless, the court declined to vacate an arbitration award that reinstated the employee with back pay following a thirty day suspension. The gas company in *Kane* argued, as Columbia Gas argues here, that the arbitration award "undermines the important public policy in favor of promoting the safe delivery of natural gas service." *Id.* at 678. The court concluded, however, that reinstatement did not "amount to judicial condonation of illegal acts," and therefore the award did not violate public policy. *Id.* at 682. As with Rose, the employee in *Kane* did not go unpunished and there was no "law that would compel the harsher sanction of discharge." *Id.* In comparing *Kane*, the employee's misconduct there posed a greater danger than Rose's misconduct here.

Several courts have cited public policy in support of the termination of an employee where that employee's misconduct affected public safety. In *Iowa Elec. Light & Power Co. v. IBEW Local 204*, 834 F.2d 1424 (8th Cir. 1987), the court vacated the reinstatement of a nuclear power plant employee who "flouted federally-mandated safety regulations." *Id.* at 1426. The court cited "a well defined and dominant national policy requiring strict adherence to nuclear safety rules," and found the employee, who deactivated an internal safety lock in order to beat the lunch hour rush, directly threatened this safety. *Id.* at 1427-28. The employee "deliberately defied the control room engineer" and the firing was approved by government officials at the Nuclear Regulatory Commission. The court focused on the fact the employee knowingly violated "an important safety system required by the federal government as a measure to protect the public from exposure to harmful radiation." *Id.* at 1426.

Our case *sub judice* differs in several respects from *Iowa Electric*: (1) the nuclear power industry regulations are more specific and "dominant;" (2) the misconduct was more egregious and

11

had greater potential to adversely impact public safety; and (3) the federal regulatory agency approved the dismissal. The employee in *Iowa Electric* deliberately compromised security and safety at a nuclear reactor site, whereas Rose's misdeeds stemmed largely from a conflict of interest and dishonesty -- not nearly the scope or potential impact.

In *Delta Air Lines, Inc. v. Air Line Pilots Ass'n Int'l*, 861 F.2d 665 (11th Cir. 1988), a court vacated reinstatement of a discharged pilot who flew a plane while under the influence of alcohol The court cited clear federal and state regulations against operation of aircraft while intoxicated and pointed to the integral relationship between this prohibition and public safety. *Id.* at 674. *Delta* was the "rare example" of an award that if enforced "would violate clearly established public policy which condemns the operation of passenger airliners by pilots who are under the influence of alcohol." *Id.* at 671. Again, the misconduct by Rose, while serious, is not covered by as many or as detailed state laws and federal regulations prohibiting flying while intoxicated. And *Delta* further noted the employee could be rehired and fly again following rehabilitation for drug or alcohol abuse. The instant case does not involve such a dominant public policy that requires termination, especially for a first time violation.

### Reinstatement of Rose Does Note Violate Public Policy

The Court finds the natural gas industry is highly-regulated by both the federal and state governments. These laws and regulations demonstrate a concern for public safety and a decision to hold employers accountable for certain employee errors in the course of employment. The laws provide some guidelines but largely require proper training and qualification. There is no dispute Rose was properly trained and qualified.

*Kane* provides the closest analogy because it involved the natural gas industry and conduct that could have caused public harm. Although Rose's conduct apparently was intentional, unlike *Kane*, his actions did not pose as great and widespread a risk as did the mistake in *Kane*. The *Kane* court ultimately declined to disturb the reinstatement of the employee because no public policy prohibited or even addressed employment or reinstatement of those who violate the regulations. Likewise here, Columbia Gas had discretion to punish Rose, and also agreed to submit such disciplinary action to the arbitration process for ultimate approval. The Court acknowledges future misconduct by Rose or any other employee could lead to vicarious liability for Columbia Gas, but for Columbia Gas to succeed the failure to terminate must be **required** by Rose's current misconduct, not some future scenario. The Court finds no such requirement to terminate Rose under these circumstances.

By agreeing to arbitration, Columbia Gas has delegated review of employee discipline. *See Mid Michigan*, 183 F.3d at 505-06. The reinstatement of Rose simply does not fit within the very narrow public policy exception. Although the Court does not condone Rose's misconduct (and as arbitrator might even have affirmed the termination), it finds no explicit public policy against the arbitrator's decision and, accordingly, declines to vacate the award.

The award is hereby affirmed effective the date of the arbitrator's decision, August 21, 2007.

13

## CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment (Doc. No. 17) is granted and Plaintiff's Motion for Summary Judgment (Doc. No. 19) is denied. The case is dismissed, each party to bear its own costs.

IT IS SO ORDERED.

>   s/ *Jack Zouhary*
> JACK ZOUHARY
> U. S. DISTRICT JUDGE
>
> May 6, 2008